AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

| | |
|---|---|
| United States of America<br>v.<br>John Youngboy LODGEPOLE,<br>year of birth 1999<br><br>*Defendant(s)* | )<br>)<br>)  Case No.  19-MJ-2388<br>)<br>)<br>)<br>) |

*FILED UNITED STATES DISTRICT COURT ALBUQUERQUE, NEW MEXICO AUG 2 2019 MITCHELL R. ELFERS CLERK*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __August 1, 2019__ in the county of __San Juan__ in the _____ District of __New Mexico__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18 §1153 | Offenses committed within Indian country |
| Title 18 §1111 | Murder |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

JORDAN SPAETH, FBI SPECIAL AGENT
Printed name and title

Sworn to before me and signed in my presence.

Date: 08-02-2019

_____
Judge's signature

City and state: Albuquerque, NM

B. Paul Briones, U.S. Magistrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT OF
## CRIMINAL COMPLAINT

I, Jordan Spaeth, being duly sworn, state as follows:

### **INTRODUCTION AND AGENT BACKGROUND**

1. This affidavit is made in support of a Criminal Complaint and an Arrest Warrant for John Youngboy LODGEPOLE, (referred to herein as "LODGEPOLE") with a year of birth 1999.

2. I am employed as a Special Agent with the Federal Bureau of Investigation (FBI) and have been a law enforcement officer for approximately 10 years. I am assigned to the FBI Albuquerque Field Office, Violent Crime Squad (VCS), where I primarily investigate violent repeat offenders, armed robberies, bank robberies, and Indian Country crimes. My investigative training and experience includes, but is not limited to, interviewing subjects, targets, and witnesses, writing affidavits for and executing search and arrest warrants, collecting evidence, conducting surveillance, and analyzing public records. I was a police officer before joining the FBI.

3. This affidavit is based upon information reported to me by other federal, state, and local law enforcement officers during the course of their official duties. Throughout this affidavit, reference will be made to law enforcement officers. Law enforcement officers are those federal, state, and local law enforcement officers who have directly participated in this investigation. This affidavit is also based upon information gained from interviews with cooperating citizen witnesses, whose reliability is established separately herein.

4. Based on my training, experience, and the facts set forth in this affidavit, I believe there is probable cause that violations of United States Code Title 18 §1111 and §1153 – Murder committed within Indian country, were committed by LODGEPOLE.

1

5. Because this affidavit is submitted for the limited purpose of securing authorization for a Criminal Complaint and Arrest Warrant, I have not included each and every fact known to me concerning this investigation. This affidavit is intended to show that there is sufficient probable cause for the requested warrant.

## PROBABLE CAUSE

6. On August 1, 2019, the Farmington Resident Agency of the FBI was notified of a reported homicide that occurred earlier that evening at a residence in Nenahnezad, New Mexico, south of the Chapter House on the Navajo Indian Reservation. Deputies with the San Juan County Sheriff's Office were dispatched to the area and upon arrival noticed that Emergency Medical Personnel were already on scene attempting to revive a female lying on the ground inside a residence. Deputies located an individual with the initials of E.L. and a year of birth of 1969 who identified herself as the reporting party. E.L. said that she was drinking alcohol with the victim, identified as an individual with the initials of M.W. and a year of birth of 1975, (referred to herein as "Jane Doe") and LODGEPOLE at her residence when LODGEPOLE violently assaulted Jane Doe by throwing her to the ground and kicking her multiple times in the head. LODGEPOLE then fled the residence and E.L. contacted 911. Deputies were notified a short time after arrival that Jane Doe was pronounced dead at the scene by Emergency Medical Personnel.

7. Deputies then secured the scene and after receiving a description of LODGEPOLE from E.L., they searched the nearby area locating LODGEPOLE in a parking lot of the Chapter House across the street from the residence. LODGEPOLE was detained and Deputies noted a red substance consistent with blood on his clothing and body. Officers with the Navajo Police arrived on scene shortly thereafter, noted the same red substance on his clothing and body and arrested LODGEPOLE.

8.      The Investigating Agents arrived on scene after the arrest of LODGEPOLE and met with the law enforcement officers who reported the before mentioned findings. Agents also met with and spoke to E.L., who identified herself as the owner of the home where the assault took place and where Jane Doe's body was located by Emergency Medical Personnel. E.L. stated that LODGEPOLE arrived at her residence earlier that evening intoxicated and that he became verbally abusive towards her and Jane Doe as the evening progressed. E.L. then observed LODGEPOLE physically assaulted Jane Doe by throwing her to the ground and kicking her in the head multiple times. E.L. said that LODGEPOLE was not wearing a shirt at the time of the assault and further said that he left the house immediately after assaulting Jane Doe. LODGEPOLE was described as being tall with a thin build. Agents observed the individual located and subsequently arrested by law enforcement and noted the individual to be a tall, thin male with no shirt. E.L. provided both verbal and written consent for the Investigating Agents to conduct a search of her home where the assault took place and where Jane Doe's body was located.

9.      Agents then conducted a search of the home with E.L. outside of the residence nearby and located various beer cans containing a liquid substance that smelled similar to alcohol in a room where Jane Doe's body was found. Additionally, Agents located and seized a metal baseball bat that had a red substance consistent with blood on the exterior. The bat was located a short distance away from Jane Doe near the front door of the room. Shoe print impressions were visible on the floor in a red substance resembling blood near the head of Jane Doe. Agents conducted a visible comparison analysis of the shoe impressions found near Jane Doe's body with the soles of the shoes worn by LODGEPOLE at the time of his arrest, noting resemblances in the patterns between the two. Agents also noted that LODGEPOLE had a red substance consistent with blood on his shoes, legs, short pants and hands.

10. The Office of the Medical Investigator (OMI) was notified and Investigator Harold Larkin arrived on scene and conducted an inspection of the body. Larkin noted approximately three visible wounds to the head of Jane Doe and believed that at least one of the wounds fractured the skull.

## JURISDICTIONAL STATEMENT

11. The offense detailed in this affidavit was committed within the exterior boundaries of the Navajo Indian Reservation. And it is believed that both Jane Doe and LODGEPOLE are enrolled members of the Navajo Tribe.

## CONCLUSION

12. Based on my training, experience, and the facts set forth in this affidavit, there is probable cause to believe that violations of United States Code Title 18 §1111 and §1153 -Murder committed within Indian country, were committed by LODGEPOLE, by assaulting and killing Jane Doe in the evening hours of August 1, 2019 within the exterior boundaries of the Navajo Indian Reservation.

13. Supervisory Assistant United States Attorney Kyle Nayback reviewed and approved this affidavit and Criminal Complaint.

Jordan Spaeth
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on August _02_, 2019:

United States Magistrate Judge